# WINDHAM COUNTY,

## FEBRUARY TERM, 1868.

[CONTINUED FROM PAGE 665 OF VOL. 40.]

### GIDEON BEMIS *v.* BRIGHAM T. PHELPS.

#### *Grand List. Real Estate. Taxes.*

Section 1, No. 18, Acts of 1863, providing that all real estate shall be set in the list to the last owner on the first day of April in each year, applies only to that class of cases where the ownership of real estate changes on the first day of April, and in no other respect changes section 9, ch. 83, p. 517, Gen. Sts., which provides that real estate shall be set in the list, etc., to the person who shall be the owner *or possessor* thereof on the first day of April in each year, unless said act of 1863 should be so construed as to extend the same rule to *possessors*, when the possession is changed on the first day of April.

Where a party once owned a farm, and had been in the possession and occupation of it for several years prior to and including the year 1865, but had executed a deed of it to his brother in 1857, which was recorded in the town clerk's office in 1863, and the farm was set to the former in the list every year, and he paid the taxes thereon without objection down to 1865, it was *held,* that the farm was properly set to him in 1865.

TROVER for two oxen. Plea, the general issue. Trial by jury, April term, 1867, BARRETT, J., presiding.

The plaintiff proved the taking and value of the oxen, and rested his case.

The defendant was collector of taxes for the town of Westminster, and defended on the ground that said oxen were distrained and sold for taxes. It appeared that said town, at its annual March meeting in 1865, which meeting was legally warned and holden, voted a tax of forty cents on the dollar of its grand list, for the support of the poor and to defray the expenses of the town, and two hundred cents on the dollar, to pay the indebtedness of the town. It further appeared that the selectmen of Westminster assessed the taxes and made out a rate-bill upon the grand list of 1865 ; that they assessed the tax-payers upon the list completed on the 15th day of May, 1865, for said sums of forty cents and two hundred cents on the dollar, and upon the list of 1865 completed on the 15th day of December of the same year, and containing the new appraisal of real estate made that year, the

sum of seven and a half cents on the dollar as a state school tax, and a state tax of sixty cents on the dollar of said grand list, and placed said rate-bill in the hands of the defendant, who was then the first constable and collector of taxes for said town of Westminster, on the 16th day of December, 1865, together with a warrant, concerning which no question was raised in the supreme court.

Upon this rate-bill the plaintiff was assessed a town tax of $128.45, a state school tax of 41 cents, and a state tax of $3.30; in all $132.16. No question was made as to the state school and state taxes, it being conceded that they were properly assessed to the plaintiff, on the list completed on the 15th of December, 1865.

The state treasurer issued his warrant to the defendant, dated December 15, 1865, for the collection of the state taxes, which was in due form, and to which no objection was made.

The defendant, as collector, exhibited said several taxes to the plaintiff, and demanded the same of him, and gave notice of the time and place when and where he would receive the taxes; and, he having neglected to pay the same or any part thereof, on the first day of August, 1866, the defendant distrained said oxen upon his said warrants, and proceeded in all respects regularly in notifying the plaintiff of the time and place when and where he would receive said taxes, and in keeping, advertising and selling said oxen upon said warrants for the collection of said several taxes. Upon the list of 1865 which was completed on the 15th day of May, there was set to the plaintiff a farm of 469 acres, valued at $4826. It appeared that for many years the plaintiff had owned and occupied said farm down to the 5th day of January, 1857, when by deed of that date he conveyed it to his brother, Nial Bemis; and, on cross-examination of the plaintiff as a witness, his testimony showed that he had continued to occupy and control said farm, and had paid the rents and taxes every year since he deeded it, except the taxes in controversy in this suit, and that he had never before had any dispute about paying the taxes, nor had he made any objection to the collector when he paid said taxes that they were not properly assessed to him.

Said deed was recorded in Westminster town clerk's office May

5, 1863. There was evidence in the case bearing upon the character of said conveyance, from which the defendant claimed that it was in legal effect a mortgage by the plaintiff to said Nial.

The court held that, upon the version given by the plaintiff, it could not be assumed as matter of law, that the transaction made the parties merely mortgageor and mortgagee; that it was proper to be submitted to the jury upon the evidence, under instructions from the court, to find whether said transaction was by way of security. The court did submit it to the jury under a satisfactory charge, to which no exception was taken.

To the court's declining to assume as matter of law, as above stated, the defendant excepted. The court instructed the jury that, if they should find that said Nial owned the farm by absolute title in fee, and not as mortgagee, it should have been set to him in the list of May 15, 1865, to which the defendant excepted.

*C. B. Eddy* and *A. Stoddard*, for the defendant.

There was error in the instruction of the court to the jury, " That, if they found that Nial owned the farm by absolute title in fee, and not as mortgagee, *it should have been set to him* in the list of May 15, 1865." The plaintiff was the possessor of the farm on the first day of April, 1865, and it might be legally set to him in the list. Gen. Sts., ch. 83, § 9. Prior to the statute of 1841, real estate in the possession of a tenant, had to be set in the list to the tenant and the owner, and they were jointly and severally liable for the tax. By the act of 1841, it was provided that it should be " set to the person who shall be the last owner or possessor thereof," etc. The act of 1841, in case real estate was on the first day of April conveyed by A to B, would authorize it to be set in the list to B, and not to A, because B was the last owner. But the act of 1855 would authorize it to be set either to A or to B, for both of them would be owners on the first day of April. Section 9 of chapter 83 of the General Statutes is precisely like section 8 of the statute of 1855. It is apparent, that the intention of the legislature in passing the act of 1863, was to restore the law, so far as it related to the owner, as it was under the statute of 1841.

*H. E. Stoughton* and *Chas. E. Arnold,* for the plaintiff.

The opinion of the court was delivered by

Pierpoint, C. J. .This is an action of trover brought against the defendant for two oxen taken by him as collector of taxes for the town of Westminster, and sold by him for the payment of a tax assessed against the plaintiff by said town.

The principal question involved is whether a certain farm situated in said town, was properly set to the plaintiff in the grand list of the town in the year 1865. It appears that the plaintiff was once the owner of this farm, and had been in the possession and occupation of it for a great many years prior to and including the year 1865. In 1857 the plaintiff executed a deed of the farm to his brother, under some arrangement, but what does not distinctly appear. The deed was not left for record until May, 1863. The plaintiff continuing in possession, the farm was set to him in the list every year, and he paid the taxes thereon without objection down to 1865. The main question that seems to have been litigated in the court below, was whether the circumstances and arrangement between the plaintiff and his brother, were such as to constitute the conveyance a mortgage as between them, the deed being absolute upon its face. This question was submitted to the jury under satisfactory instructions, the court at the same time holding that, if it was not a mortgage, then the land was wrongfully set in the list to the plaintiff, and he was entitled to recover. The jury by returning a verdict for the plaintiff have settled the question, that it was not a mortgage.

The defendant contends, that, conceding that the deed was absolute, and not a mortgage, still the land was properly set to the plaintiff in the list, he being the possessor thereof on the first day of April, 1865.

By the ninth section of chapter 83 of the General Statutes, it is provided that " All real estate shall be assessed and set in the list in the town where such real estate is situated, to the person who shall be the owner *or ' possessor* thereof on the first day of April in each year." Under this section, we think, there can be no question as to the right of the listers to set the land in the

list to the plaintiff as the possessor of it; clearly not, in view of the circumstances developed in this case.

But it is said the law in this respect is changed by the act of 1863, and that, after that act went into operation, all estate both real and personal was required to be set in the list to the owner, the right to set it to the possessor being taken away.

The first section of the act of 1863 is as follows: "Section two of chapter 83 of the General Statutes shall be so construed as to require all real and personal estate to be set in the list to the last owner of said estate on the first day of April of each year."

This act does not refer to section 9 of chapter 83 of the General Statutes; and section 2, referred to, says nothing on the subject of to whom the property shall be set in the list. It directs at what per cent. of the true value it shall be set in the list, and that its value shall be determined as of the first day of April of the year in which it is appraised. Still, so far as the act of 1863 is to be regarded as changing the law of the subject to which it relates, it must control both sections.

In what respect does the first section of the act of 1863 change the law? and to what was it intended to apply? This act by its language manifestly was intended to apply only to that class of cases where the ownership of real estate changes on the first day of April. One man is the owner in the morning, and liable to have it set in the list to him; in the course of the day he sells it, and then the purchaser becomes the owner on the first of April, and is liable to have it set to him. The listers would be justified by the letter of the law, as it stood prior to the act of 1863, in setting it to each of them; and if they were to set it to but one, they might well doubt as to which of the two it ought to be set to. The legislature by this act settled this doubt, by declaring that it should "be set in the list to the last owner of said real estate on the first day of April of each year;" and this, we think, is the only respect in which this section has changed the law, unless it be said that it should be so construed as to extend the same rule to possessors, when the possession is changed on the first day of April.

This being the construction of the statute, the land was properly set in the list to the plaintiff, and the tax thereon was a legal one.

No question is made in this court as to the sufficiency of the warrant.

No question has been made as to the right of the plaintiff to maintain this action under the circumstances of this case, instead of proceeding against the listers or the town ; and we have no occasion to consider that question. It is alluded to only for the purpose of excluding any inference that might otherwise be drawn in favor of the proceeding.

Judgment of the county court reversed, and the case remanded.